UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

BNP PARIBAS MORTGAGE
CORPORATION and BNP PARIBAS,

               Plaintiffs,

  - against -

BANK OF AMERICA, N.A.,

            Defendant.

------------------------------------X

DEUTSCHE BANK AG,

              Plaintiff,

  - against -

BANK OF AMERICA, N.A.,

            Defendant.

------------------------------------X

09 Civ. 9783 (RWS)

OPINION

09 Civ. 9784 (RWS)

OPINION

A P P E A R A N C E S:

      <u>Attorneys for Plaintiffs BNP Paribas</u>
      <u>Mortgage Corporation and BNP Paribas</u>

      BOIES SCHILLER & FLEXNER LLP
      333 Main Street
      Armonk, NY  10504
      By:  Robin A. Henry, Esq.
          Motty Shulman, Esq.
          Jack Wilson, Esq.

<u>Attorneys for Plaintiff Deutsche Bank AG</u>

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
By:  William E. McDaniels, Esq.
     Stephen D. Andrews, Esq.
     Stephen P. Sorensen, Esq.
     Daniel M. Dockery, Esq.
     Katherine O'Connor, Esq.


<u>Attorneys for Defendant Bank of America, N.A.</u>

MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
By:  Marc T.G. Dworsky, Esq.
     Kristin Linsley Myles, Esq.
     Gregory Weingart, Esq.
     Richard St. John, Esq.


KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY  10036
By:  Richard T. Marooney, Esq.

**Sweet, D.J.**

Defendant Bank of America, N.A. ("BoA" or the "Defendant") has moved for an order compelling plaintiffs BNP Paribas Mortgage Corporation ("BNP Mortgage") and BNP Paribas ("BNPP") (collectively, "BNP") to produce certain documents at issue (the "Documents") pursuant to Rule 37 of the Federal Rules of Civil Procedure (the "Motion to Compel"). BoA contends that any claim of privilege as to the Documents is waived because BNP repeatedly and allegedly carelessly produced them. The Motion to Compel seeks to compel BNP to withdraw its request that BoA destroy the Documents and to permit BoA to use them free of any claim of privilege.

While the Motion to Compel was sub judice, BNP and Deutsche Bank ("DB") (collectively, the "Plaintiffs") jointly moved for declaratory relief, or, in the alternative, clarification concerning a protective order (the "Motion for Clarification"). Specifically, the Plaintiffs seek an order declaring that paragraph 18 of the Amended Stipulation and Order for Production and Exchange of Confidential Information entered by this Court on December 28, 2011 (the "Protective Order") requires a party receiving a clawback request to refrain from

any further use or review of the subject documents and to return
or destroy the subject documents within three business days.

Highly skilled and experienced attorneys drafted the
Protective Order in order to anticipate and deal with the
inadvertent production of privileged material.  Perhaps because
of the alleged materiality of the ten Documents (and their
iterations), the parties now differ sharply as to the
application of the Protective Order, which they drafted.  It is
hoped that what follows will assist the parties in their
administration of discovery in this significant and challenging
litigation.

The parties' motions present discovery issues with
respect to inadvertent production of privileged matter, waiver
of the privilege and proper exercise of the privilege and the
process by which these issues are to be resolved.  Upon the
conclusions set forth below, the Motion to Compel is granted in
part and denied in part and the Motion for Clarification is
granted.

I. **Prior Proceedings & Relevant Background**

3

The facts underlying this action were previously set forth in a number of prior opinions.  See BNP Paribas Mortg. Corp. v. Bank of America, N.A., 866 F. Supp. 2d 257 (S.D.N.Y. 2012); BNP Paribas Mortg. Corp. v. Bank of America, N.A., Nos. 10 Civ. 8630, 10 Civ. 8299, 2011 WL 3847376 (S.D.N.Y. Aug. 30, 2011); BNP Paribas Mortg. Corp. v. Bank of America, N.A., 778 F. Supp. 2d 375 (S.D.N.Y. 2011).  The facts relevant to the instant motions are summarized below, and familiarity with the general background of this case and prior litigation between the parties is assumed.

Prior to the production of documents in this case, the parties actively participated and negotiated a protective order for the production and exchange of confidential information.  As provided in Rule 502(d) of the Federal Rules of Evidence, this Court entered the initial protective order on June 24, 2011. (Dkt. 59).

Subsequently, the parties agreed to certain amendments that would extend the reach of the order to this action as well as a related case against BoA filed by Natixis Financial Products LLC.  See Natixis Financial Products LLC v. Bank of America, N.A., No. 10-3656(RWS).  The Protective Order was

amended by, agreed to, and submitted by the parties, and docketed by this Court on December 28, 2011.

Paragraph 18 of the Protective Order provides as follows:

> 18. Pursuant to Rule 502(d) of the Federal Rules of Evidence, the inadvertent production of any document after the date that this Order is signed that would be protected from disclosure pursuant to the attorney-client privilege, work product protection, or any other relevant privilege, shall not constitute waiver of the applicable privilege or protection in this or any other Federal or State proceeding. If any such document is inadvertently produced, the recipient of the document agrees that, upon written request from the producing party, it will return the original and all copies of the document in its possession to the producing party within three (3) days of receipt of the written request, delete any versions of the documents on any database it maintains and make no use of the information contained in the document, provided, however, that the party returning such document shall have the right to apply to the Court for an order that such document is not protected from disclosure by any privilege or protection.

(Protective Order ¶ 18).

Discovery commenced in August 2011 and BNP made 14 separate productions between that time and June 2012. The document production involved a review of approximately 1.5 million documents, totaling approximately 2.8 million pages.

Following the review, BNP produced, on a rolling basis, more than 156,000 documents totaling 625,000 pages, as well as privilege and redaction logs identifying more than 12,000 documents withheld for privilege and more than 900 produced with redactions. (Wilson Decl. ¶ 2).

BNP's document review and production process involved certain procedures designed to train attorneys and prevent disclosure of privileged information contained in the documents. All documents marked for review were first processed by an external vendor, who loaded them onto an online document review platform. (Wilson Decl. ¶ 3). Responsive documents were collected by the law firm of Boies Schiller & Flexner LLP ("Boies Schiller") and up to 40 contract attorneys, who were trained to identify privilege issues and provided with a list of in-house and outside attorneys and law firms that represent BNP. (Id. ¶¶ 5-7). The reviewing attorneys were told which time periods and which types of documents were most likely to contain privileged information. (Id. ¶ 7). Additionally, Boies Schiller attorneys periodically reviewed the contract reviewers' work, provided training materials, corrected errors and provided feedback both to the entire review team and to individual reviewers. (Id. ¶ 7). Despite these procedures, BNP

inadvertently produced a number of privileged documents in
unredacted form.

Prior to October 18, 2012, there was no dispute
regarding the Protective Order's clawback provision. Throughout
the discovery process, the parties had clawed back documents
pursuant to the Protective Order. On May 18, 2012, for example,
DB requested the return of the original production disks and the
destruction of all hard and electronic copies of certain
documents, and BoA complied with the request. On September 10,
2012, BoA also complied with BNP's request to claw back seven
documents and return or destroy the inadvertently produced
documents.

On October 16, 2012, counsel for BNP sought to
introduce a document, which BoA had produced, as a deposition
exhibit. At the deposition, counsel for BoA asserted that the
document was privileged and had been inadvertently produced,
noting on the record that the document had been marked as
"Privileged and Confidential." (Holcomb Decl. Ex. E). BNP's
counsel agreed to make no further use of the document and agreed
to return all copies.

On October 17, 2012, counsel for BoA wrote a letter to counsel for BNP to raise questions concerning BNP's production and privilege log (the "October 17 Letter"). Specifically, BoA's counsel stated that six BNP documents had been produced with inconsistent redactions, noting that BNP had apparently redacted documents on grounds other than privilege or work product, had provided no custodian information for certain documents, and that several hundred pages of BNP's production consisted of illegible handwriting. (Holcomb Decl. Ex. F).

The next day, on October 18, 2012, BNP began clawing back documents identified in the October 17 Letter. Counsel for BNP asserted a claim of "attorney-client and/or work product privilege" as to one of the six documents BoA had listed – the January 12, 2009 minutes from a meeting of BNP's Credit Committee (the "Credit Committee Minutes") – and requested destruction of six of the seven unredacted iterations of the document that BoA had listed. (Gildersleeve Decl. Ex. L).

After BoA asked BNP to explain its privilege claim and to clarify whether it intended to assert a claim of privilege as to any of the other documents listed by BoA, BNP repeated its destruction request to six of the seven iterations of the Credit Committee Minutes, which it asserted "reflect advice that was

given by BNPP's outside counsel. . . ."  (Id. Ex. N).  BNP also reiterated that paragraph 18 of the Protective Order "allows you to apply to the Court for an order that an inadvertently produced document is not privileged but does not absolve you of your obligation to destroy such documents within three business days."  (Id.).

By letter dated October 19, 2012, BoA sought clarification from the Court regarding the Protective Order's clawback provision, and whether it allows a party to retain a document as to which the producing party has asserted a privilege claim and requested destruction, for the limited purpose of challenging that privilege claim as contemplated by the Protective Order.  (Holcomb Decl. Ex. H).  Later that day, the parties conferred by telephone, and BoA withdrew its letter to the Court as BNP agreed that BoA could retain the documents at issue pending resolution of the privilege dispute.

On October 23, 2012, the counsel for BoA and BNP held a meet and confer teleconference, during which BNP's counsel stated that it would request the destruction of additional, unspecified documents.

Two days later, counsel for BNP sent a letter to counsel for BoA, DB and Natixis seeking to claw back 110 iterations of ten documents, all based on attorney-client privilege. (Id. Ex. J). Among the documents included on BNP's list were the seven iterations of the Credit Committee Minutes. (Id.). In total, BNP requested BoA to destroy at least 116 distinct iterations of ten documents that BNP had produced in nine separate productions dating back to November 2011. (Id.). In a second letter from BNP to BoA on October 25, 2009, BNP pointed out to BoA that BoA's own production contained inconsistent redactions and offered examples. (Id. Ex. K).

On November 5, 2012, the parties met and conferred regarding BNP's assertions of attorney-client privilege as to the ten Documents at issue. The Documents included:

- Minutes of January 12, 2009, Credit Committee meeting.

- An email exchange among Avi Pemper, Ken Campbell, and Everett Chang.

- An email exchange between Pemper and Craig Stansbury of BNPP, dated from December 29, 2008 to January 2, 2009.

- An email exchange between Pemper and Stansbury, dated January 6, 2009.

- A Group Risk Management Mortgage Banking Quarterly Portfolio Review for 4Q 2008.

- A "Legal Status Report" prepared by Thacher, Profitt & Wood LLP, dated October 12, 2007.

- A Transaction Approval Committee Document for a transaction entitled "Eurohypo AG Muni TRS," dated August 18, 2006.

- An email exchange among Pemper, Stansbury, and Campbell, dated from September 11 to 25, 2008.

- Minutes of an April 30, 2008, Pre Transaction Approval Committee meeting.

- Minutes of a May 8, 2008, Transaction Approval Committee meeting.

The parties did not reach agreement on BNP's claims of privilege, although BNP subsequently withdrew certain of its proposed redactions.  (Gildersleeve Decl. Ex. R).

On November 6, 2012, BoA and BNP exchanged letters concerning topics discussed during the meet and confer teleconference.  BoA sent a letter with respect to its decision to attach copies of the Documents to BoA's motion papers. (Holcomb Decl. Ex. M).  BNP replied with a letter that day identifying fifteen documents that appeared both on BoA's privilege logs and in BoA's document production.  (Id. Ex. N).

On November 9, 2012, BoA filed its Motion to Compel seeking an order compelling BNP to withdraw its request that BoA destroy the Documents and allow BoA to use the Documents free of any claim of privilege.  On November 16, 2012, BNP and DB filed their joint Motion for Clarification.

Both motions were heard and marked fully submitted on December 5, 2012.

## II.  <u>General Principles of Inadvertent Disclosure</u>

The issue of inadvertent production of privileged material has been vexing courts over time.  Over twenty-eight years ago it was presented in <u>Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.</u>, 104 F.R.D. 103 (S.D.N.Y. 1985), now fondly remembered.

In this district, courts apply the multi-factor <u>Lois Sportswear</u> test to determine whether the alleged inadvertent disclosure should result in waiver.  The factors which go into that determination include (1) "the reasonableness of the precautions to prevent inadvertent disclosure"; (2) "the time taken to rectify the error"; (3) "the scope of discovery"; (4)

"the extent of the disclosure"; and (5) "an overreaching issue
of fairness."  Id. at 105.

Here, paragraph 18 of the Protective Order provides
that a party producing a document does not waive any claim of
privilege as to that document if its production was inadvertent.
Thus, under the terms of the Protective Order, if a party
produces a privileged document inadvertently, there is no waiver
of privilege and the document can be "clawed back."

According to BNP, a claim of inadvertent disclosure
triggers the Protective Order.  BoA, on the other hand, contends
that the production of the Documents was not inadvertent, but
intentional and deliberate, albeit in error, and therefore the
provisions of the Protective Order are not applicable.  The
resolution of this threshold issue is best served by the
application of the Lois Sportswear factors.

## III.  **Application of the *Lois Sportswear* Factors to the Documents**

### A) **BNP Used Reasonable Precautions**

The Wilson Declaration describes the document review
procedures employed in the instant case.  Documents were

collected for review from hard copy and electronic files, and then processed and loaded into an online document review platform maintained by an external vendor. (Wilson Decl. ¶ 3). The review process involved a team of up to 40 contract employees, each trained to identify privilege issues and provided with lists of attorneys' names and firms who represented BNP during the relevant time period. (Id. ¶¶ 5-6). Contract attorneys' training was periodically updated through additional written materials, regular communications between Boies Schiller attorneys and the contract attorney review team leader, and periodic in-person discussions addressing questions about privilege. (Id. ¶ 7).

Such processes of review are consistent with those frequently employed in complex litigation and previously considered reasonable by courts. See e.g., Jacob v. Duane Reade, Inc., No. 11 Civ. 0160(JMO)(THK), 2012 WL 651536, at *4 (S.D.N.Y. Feb. 28, 2012) (finding that reasonable measures were employed where defendants hired "an outside vendor to host the electronic data retrieved. They then retained a team of between ten and fifteen contract attorneys, working under the supervision of a Project Manager and litigation counsel . . . [and] prepared lists of names and attorneys whose communications

14

should be privileged, employed search filters, and quality control reviews.").

Additionally, the processes employed by BNP's counsel here are strikingly similar to those processes that BoA's counsel Munger Tolles & Olson LLP ("Munger Tolles"), successfully defended in Datel Holdings Ltd. v. Microsoft Corp., No. C-09-05535 EDL, 2011 WL 866993, at *2 (N.D. Cal. Mar. 11, 2011). In that case:

> Defendant hired a group of contract lawyers to review the documents for privileged material. A team of attorneys initially screened responsive documents and identified potentially privileged documents. A quality control team then reviewed any documents marked potentially privileged. A privilege team then reviewed any documents that were still designated as privileged after the second review, and privileged documents were entered into a privilege log. Reviewing attorneys had specific instructions to identify documents that contain attorney-client communications and work-product. In addition to providing written instructions, Defendant's litigation counsel conducted a tutorial for the reviewers. From time to time, Defendant's litigation counsel also conducted its own quality control checks.

2011 WL 866993, at *4 (citations omitted).

Describing these processes as "fairly robust," the court concluded that they were reasonable. Id. The court

further agreed with Munger Tolles that its failure to gather and
code all emails in an email string, upon determining that any
email in the string contained privileged information, was not
unreasonable because such "cross-checking would have required
'Herculean efforts' that are not required under [Rule 502(b)]
and would grind Defendant's document production to a halt." Id.
at *4.


The Datel Holdings court also noted that the
"[i]nadvertent production of a relatively low proportion of
documents in a large production under a short timetable due to
mistake should be and usually is excused." Id. at *4.  The
cases cited by BoA supporting their waiver argument involve
small document productions or demonstrated carelessness.  See
e.g., Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc., No. 96
Civ. 2064, 1996 WL 668862, at *5 (S.D.N.Y. Nov. 19, 1996)
(explaining that scope of discovery "was limited to the
relatively small number of documents included in Perrone's
file"); see also Local 851 of Int'l Bhd. of Teamsters v. Kuehne
& Nagel Air Freight, Inc., 36 F. Supp.2d 127, 129 (E.D.N.Y.
1998) (finding carelessness amounting to waiver where attorney
attached document at issue as Exhibit F to declaration submitted
in support of motion); Mt. Hawley Ins. Co. v. Felman Prod.,
Inc., 271 F.R.D. 125, 127 (S.D.W. Va. 2010) (finding careless

production in case of "classic 'document dump'"); FDIC v. Marine
Midland Realty Credit Corp., 138 F.R.D. 479, 483 (E.D. Va. 1991)
(finding inadequate precautions where attorney handling "large
document production . . . devoted only the efforts of two
persons for one day to this task").

     In contrast, the 116 documents at issue here represent
less than one-hundredth of one percent of the approximately 1.5
million documents reviewed, and less than one-tenth of one
percent of the approximately 156,000 documents that BNP produced
in this litigation.  See Datel Holdings, 2011 WL 866993 at *4
(rejecting argument that clawback of 177 documents followed by
request to clawback 44 additional documents showed that Munger
Tolles' client had taken unreasonable precautions); see also HSH
Nordbank AG N.Y. Branch v. Swerdlow, 259 F.R.D. 64, 75 (S.D.N.Y.
2009). ("[W]hen judged against the total number of documents
produced, as well as the total number of documents reviewed, the
number of privileged documents released is minuscule."); SEC v.
Cassano, et al., 189 F.R.D. 83, 86 (S.D.N.Y. 1999) ("[T]he
inadvertent production of one or a few privileged documents in a
massive disclosure is not necessarily inconsistent with the
exercise of due care to avoid such occurrences, as it is
virtually impossible to avoid any error whatsoever in dealing
with large volumes."); Asian Vegetable Research & Dev. Ctr. v.

Inst. of Int'l Educ., No. 94 Civ. 6551, 1995 WL 491491, at *7 & n.6 (S.D.N.Y. Aug. 17, 1995) (20 of 75,000 (0.02%) pages reviewed represented "a relatively small number of privileged documents . . . in comparison to the total number of documents produced.") (citing similar cases, including Lois Sportswear, in which 22 privileged documents were produced out of 16,000 pages reviewed).

Taken together, the evidence presented suggests that BNP took reasonable precautions to protect the confidentiality of privileged documents and prevent disclosure.  Accordingly, the first Lois Sportswear factor weighs in favor of finding that the Documents were produced inadvertently rather than as a knowing waiver.

**B) The Time Taken To Rectify The Error**

"The period after the producing party realizes that privileged information has been disclosed is the relevant period for measuring whether the privilege has been waived."  Aramony v. United Way of America, 969 F. Supp. 226, 237 (S.D.N.Y. 1997).

BoA asserts that BNP "was obligated to act 'immediately' to rectify any error," and suggests that "one or

18

two days" should be the benchmark for promptness.   (Memo. in Support at 12-13) (citing cases including Cassano, 189 F.R.D. at 86) (finding that "[t]here is no excuse for waiting 12 days to find out what the document was."). BoA contends that the October 17 Letter alerted BNP to a total of six inconsistently redacted documents and that only six days later did BNP advise BoA that it planned to make additional clawback requests by October 25.   According to BoA, BNP has offered no reason for its piecemeal approach to protecting the privileged nature of the Documents and the delay weighs in favor of finding waiver. (Memo. in Support at 13) (citing to Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y., No. 07 Civ. 1471(RRM)(LB), 2009 WL 393644 (E.D.N.Y. Feb. 13, 2009) (finding waiver where the producing party waited "six days before responding to HIP's letter and another nine days before notifying HIP of specific documents inadvertently produced . . . ."

BNP began reviewing its extensive production of documents upon receiving BoA's October 17 Letter detailing the relevant documents.   Unlike in Brookdale Univ. Hosp., between October 17 and November 6, multiple letters were exchange between the parties, sometimes several in one day.   (See generally Gildersleeve Decl. Exs. K-R; Holcomb Decl. Exs. F-O).

BNP's counsel notified BoA's counsel during a meet and confer on October 23 that it was working to compile a clawback list, which would be provided no later than the following day.  Courts have recognized similar efforts as prompt and reasonable.  See e.g., Quinby v. Westlb AG, No. 04 Civ. 7406 (WHP), 2007 WL 2068349, at *2 (S.D.N.Y. July 18, 2007) (holding that defendant acted promptly when it was alerted to mistakenly produced documents on December 2, began review of its 650,000 page production to compile a log of inadvertently produced documents on December 7, and served its clawback request on December 30).  BNP thus made prompt efforts to rectify their error and the second Lois Sportswear factor weighs in their favor.


## C) The Scope Of Discovery

The third Lois Sportswear factor seeks to compare the "scope of the discovery with the amount of the privileged or protected material disclosed."  Martin v. Valley Nat'l Bank of Arizona, 89 Civ. 8391, 1992 WL 196798, at *3 (S.D.N.Y. Aug. 6, 1992).  "Courts have routinely found that where a large number of documents are involved, there is more likely to be an inadvertent disclosure rather than a knowing waiver."  Baker's Aid v. Hussmann Foodservice Co., No. 87 Civ. 0937, 1988 WL 138254, at *5 (E.D.N.Y. Dec. 19, 1988).

Here, the large scope of discovery weighs against a finding of waiver.  As previously discussed, the document production involved 1.5 million documents totaling 2.8 million pages.  The Documents at issue here represent less than one-hundredth of one percent of those reviewed.  Courts have found that "[s]uch errors are, of course, inevitable in complex litigation involving the production of tens of thousands of documents." Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437 (S.D.N.Y. 1995); see Jacob, 2012 WL 651536, at *4 (deeming disclosure inadvertent where privileged material was disclosed "as part of the production of voluminous amounts of ESI"); Datel Holdings, 2011 WL 866993, at *4 ("In relatively large productions of electronic information under a relatively short timetable, perfection or anything close based on the clairvoyance of hindsight cannot be the standard; otherwise, the time and expense required to avoid mistakes to safeguard against waiver would be exorbitant, and complex cases could take years to ready for trial.").

Accordingly, the large production required in an action of this complexity fortifies the BNP's claim of inadvertence.

## D) The Extent Of The Disclosure

BoA contends that the extent of disclosure favors waiver because "the language that BNP now claims is privileged was disclosed completely" and "the fact that it was BoA that ultimately brought the Documents to BNP's attention supports a finding of waiver." (Memo. in Support at 14). However, according to BNP, the "language" at issue, to be considered below, consists of descriptions of legal advice embedded within non-privileged material. The documents BNP has sought to claw back are asserted to refer to legal advice provided by counsel to BNP. BNP's privilege log contains numerous entries reflecting communications between BNP and outside counsel, Orrick, Herrington & Sutcliffe LLP ("Orrick"), which BNP consistently withheld in their entirety. The limited extent of disclosure therefore favors BNP. BoA has itself clawed back documents that BNP brought to the attention of BoA. (See Holcomb Decl. Exs. E, K, L).

## E) Fairness

According to BoA, the Documents contradict the contract assertions advanced by BNP and are significantly material. (Memo. in Support at 15-16). However, "[t]he

prejudice factor focuses only on whether the act of restoring immunity to an inadvertently disclosed document would be unfair, not whether the privilege itself deprives parties of pertinent information." Bank Brussels Lambert, 160 F.R.D. at 446.

By these terms and weighing the prejudice to both parties, there is no unfairness in precluding the Documents from BoA. The purpose of the Protective Order is to shield privileged material and it is fair to both sides to protect the privilege.

## IV.  The Privilege Was Not Waived

The opposite side of the coin of inadvertence is waiver, which must be knowing. See Aramony, 969 F. Supp. at 135 (stating that "[i]f a party voluntarily discloses a document, it waives any claim of attorney-client privilege and cannot later seek to keep the document confidential."). Further, courts in the Second Circuit have held that where there is a protective order with a clawback provision, inadvertent production of a document does not constitute waiver unless the document production process itself was "completely reckless." E.g., HSH Nordbank, 259 F.R.D. at 75 ("[W]here parties execute such an

order, waiver is appropriate only if production of the privileged material was 'completely reckless.'").

According to BNP, when a clawback provision controls, a party may waive privilege only if production of the privileged document was "completely reckless." Id. BoA, however, contends first, that the clawback provision implicitly incorporates the test for waiver of privilege under Federal Rule of Evidence 502(b) because of the use of the word "inadvertent," and second, that BNP's production of these documents was not inadvertent and therefore waived. These arguments are rejected for the following reasons:

First, the clawback provision of the Protective Order expressly invokes Rule 502(d), not Rule 502(b). It expressly states that "[p]ursuant to Rule 502(d) of the Federal Rules of Evidence," which provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court." Fed. R. Evid. 502(d). As the Advisory Committee Notes to Rule 502(d) acknowledge, the purpose of such order is to "limit[ ] the costs of privilege review and retention, especially in cases involving electronic discovery." Fed. R. Evid. 502 Advisory Committee Notes. Likewise, the Statement of Congressional Intent explains

that "[t]his subdivision [502(d)] is designed to enable a court
to enter an order . . . that will allow the parties to conduct
and respond to discovery expeditiously, without the need for
exhaustive pre-production privilege reviews, while still
preserving each party's right to assert the privilege to
preclude use in litigation of information disclosed in such
discovery." Id.

Second, Rule 502(b) set forth three requirements, all
of which must be met to avoid waiver in the absence of a
protective order with a clawback provision.  It states that "the
disclosure does not operate as a waiver . . . if:

(1)  the disclosure is inadvertent;

(2)  the holder of the privilege or protection took
     reasonable steps to prevent disclosure; and

(3)  the holder promptly took reasonable steps to
     rectify the error, including (if applicable)
     following Federal Rule of Civil Procedure
     26(b)(5)(B)."

Fed. R. Evid. 502(b).  As courts have noted, "[t]hese three
requirements are separate and should not be conflated in the
analysis; in particular, inadvertence under the first prong does
not turn on the reasonable steps taken to prevent mistaken
disclosure addressed in the second prong." Datel Holdings, 2011

25

WL 866993, at *2.  There is no indication that the use of the word "inadvertent," which represents only the first of three requirements under Rule 502(b), transforms the clawback provision to one identical to the Rule 502(b) standard. Additionally, these contentions with respect to the "recklessness" standard are circular in that the Lois Sportswear factors sought to define "inadvertent."  The addition of another definition term, "recklessness" in the view of this Court adds nothing to the determination of waiver or its opposite inadvertence.

Moreover, enacted in 2008, Federal Rule of Evidence 502(b) largely codified the first four factors of the Lois Sportswear test.  See Fed. R. Evid. 502(b) (no waiver if "disclosure is inadvertent" and producing party "took reasonable steps to prevent disclosure" and "promptly took reasonable steps to rectify the error.").  The Advisory Committee Notes to Rules 502(b) explains that although "[t]he rule does not explicitly codify that test, because it is really a set of non-determinative guidelines that vary from case to case," it is nevertheless "flexible enough to accommodate any of those listed factors."  Fed. R. Evid. 502 Advisory Committee Notes. Accordingly, courts have continued to apply the Lois Sportswear factors after the enactment of Rule 502(b).  See e.g., Fuller v.

Interview, Inc., No. 07 Civ. 5728(RJS)(DF), 2009 WL 3241542, at *3 n.4 (S.D.N.Y. Sept. 30, 2009) ("[T]he test contained in Rule 502 for determining when a waiver of privilege has occurred is effectively the same as the test that this Court generally employed prior to the Rule's enactment." (citing Lois Sportswear, 104 F.R.D. at 105)).

As discussed in the Lois Sportswear section, BNP took reasonable precautions to protect the documents and actively attempted to rectify the error once the Documents were identified.  Accordingly, under either standard, waiver has not been established.

## V. **The Exercise Of The Privilege With Respect To The Documents**

The attorney-client privilege protects "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007).  The party asserting the privilege bears the burden of establishing it. Id.

BoA has challenged the exercise of the privilege by BNP with respect to redactions to 5 of the Documents.[1]  BoA contends that, even if BNP did not waive its privilege claims, BNP's proposed redactions sweep too broadly and would suppress business advice that is merely consistent with legal advice.

The rulings relating to BNP's exercise of privilege are set forth below.

### 1.   May 8, 2008 Transaction Approval Committee Minutes

BoA disputes BNP's privilege claim as to the minutes of a May 8, 2008 meeting of BNP's Transaction Approval Committee concerning the restructuring of BNP's investment in Ocala.  BNP seeks to redact multiple portions of this document.

According to the unchallenged affidavit evidence, the first sentence referring to "outside counsel" reflects the advice of counsel and is therefore privileged.  (Pemper Affid. ¶ 16).  The third sentence is no longer in contention.

---

[1] BoA does not question the privileged nature of the remaining Documents collected in the Gildersleeve Decl. Exs. B, C, F, G, and H, and limits its argument regarding those documents to a claim of waiver.

In the paragraph beginning "They reviewed the documents," "They" refers to outside counsel, Orrick, and the paragraph appears to be the substance of legal questions and answers as to the parties' contractual rights and obligations, and is therefore privileged.

All references to Freddie Mac or "FM" concern financial and business elements of BNP's transactions and are therefore not privileged.

2.   January 12, 2009 Credit Committee Minutes

The second document as to which BoA disputes BNP's privilege claim consists of the minutes of a meeting in which BNP's Credit Committee considered whether to extend BNP's investment in Ocala.

Affidavit evidence has been submitted that "3rd Party Legal" referred to outside counsel.  The remainder of the paragraph appears to summarize the review and is therefore privileged.

3.   January 6, 2009 Stansbury/Pemper Emails

The third document as to which BoA disputes BNP's privilege claim is an email exchange between Craig Stansbury and Avi Pemper concerning BNP's negotiations with LaSalle. BNP seeks to redact the answer that appeared below the question "What Do we want from a custodian/ trustee?"

The introductory phrase starting with "Negotiate" and ending with the word "game" does not reflect attorney-client assignments or advice and therefore not privileged.

The rest of the email, however, is privileged and may be redacted. The communication following the first sentence refers to legal advice from Peter Maribeck and is properly protected under the privilege. While neither party to this email is an attorney, "the privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation." Bank Brussels Lambert, 160 F.R.D. at 442.

4.  Group Risk Management Quarterly Portfolio Review

The fourth document as to which BoA disputes BNP's privilege claim is a quarterly review by BNP's Risk Management Group.

"3rd Party Legal" refers on this record to outside counsel, Orrick.  However, the sentence that BNP seeks to redact here does not describe a request for legal advice, but rather only the scope of the engagement.  See J.P. Foley & Co. v. Vanderbilt, 65 F.R.D. 523, 526 (S.D.N.Y. 1974) ("[T]he privilege pertains solely to the substance of communications. It does not preclude inquiry into the subject matter of the communications.").  Accordingly, this sentences is not privileged and should be produced without redaction.

5.   April 30, 2008 Pre-Transaction Approval Committee Minutes

The fifth document as to which BoA disputes BNP's privilege claim consists of the minutes of a April 30, 2008 meeting of BNP's Pre-Transaction Approval Committee concerning the restructuring of BNP's investment in Ocala.

The sentence beginning with "Questions" reflect the subjects to be discussed with in-house counsel Jane Shahmanesh and are therefore privileged.

## VI.  The Motion To Enforce The Protective Order Is Granted

Where a court possesses authority in the first
instance to issue an order, it necessarily retains the inherent
authority to effectuate that order.  See Hunt v. Enzo Biochem,
Inc., 06 Civ. 170 SAS, 2012 WL 5199247, at *3 (S.D.N.Y. Oct. 22,
2012) ("Courts have inherent power to enforce their orders.").
That inherent authority extends to enforcement of protective
orders.  See id. (enforcing an order for the protection and
exchange of confidential information).

Production and clawback issues are governed in this
matter by the Protective Order and Federal Rule of Evidence 502.
Fed. R. Evid. 502(d).  More specifically, because the Protective
Order "was expressly issued pursuant to Federal Rule of Evidence
502," the parties "intended, as that Rule permits, to displace
the waiver text of that Rule with the more liberal clawback
provisions of the Protective Order."  See Zivali v. AT&T
Mobility LLC, No. 08 Civ. 10310 (JSR), 2010 WL 5065963, at *1
(Dec. 6, 2010).

The Protective Order states that a party receiving a
clawback request must honor it, regardless of whether the party
agrees with the assertion of privilege.  Had it been intended
that a party could refuse to comply with a clawback request it
disagreed with, the clawback provision would have contained

32

language requiring the refusing party to seek court resolution
of the dispute within a defined period of time. Nor does such
language appear in Paragraph 4 of the Protective Order, which
requires parties to comply with all confidentiality
designations, regardless of whether they agree with them, unless
and until, a court orders otherwise.

In the event that the receiving party disagrees with
the assertion of privilege, the clawback provision provides
"that the party returning such document shall have the right to
apply to the Court for an order that such document is not
protected by disclosure by any privilege or protection". The
provision's reference to the rights of "the party returning such
document" contemplates that if the receiving party chooses to
challenge the producing party's assertion of privilege, it is
expected to do so after "returning such document," not before.

A party may move to compel production, but must first
return the document and, once it has done so, may base its
challenge on the information supplied by the withholding party
pursuant to Rule 26(b)(5)(A). The challenging party may also
request in-camera review by the court of the document. The
fact that the challenging party has returned or destroyed its

33

copies of the document is no obstacle, as the producing party itself can supply the document to the court.

In the event of such a challenge in the course of discovery in this action, the court will direct production for in-camera review of the challenged document.  While the parties in fashioning this clawback provision favored the exercise of the privilege, the challenging party is not unfairly handicapped having seen the document and having it produced for court review.

This approach has been followed in other cases in which clawback provisions existed. In MSTG, Inc. v. AT&T Mobility LLC, for example, the receiving party returned documents in response to a clawback request but then moved to compel their production; the producing party, in turn, submitted the documents for in camera review.  No. 08 Civ. 7411, 2011 WL 221771 (N.D. Ill. Jan. 20, 2011).

Here, the parties to the Protective Order provided for return, not sequester, of the documents.  Throughout the discovery process, the parties previously had adopted this practice of returning, rather than sequestering, documents.  The additional requirement to invoke court intervention does not

handicap either of these substantial and well-advised parties. Accordingly, as set forth above, the plain language meaning of the paragraph 18 of the Protective Order is adopted here and a party receiving a clawback request is to refrain from any further use or review of the subject documents and to return or destroy the subject documents within three business days.

## V. Conclusion

The motion of BoA is denied in part and granted in part as set forth above. The motion of BNPP is granted as set forth above.

This opinion and order will be sealed and the parties are directed to meet and confer with respect to unsealing or if necessary submitting redactions to permit an amended order to be filed.

It is so ordered.

New York, NY
March 7 , 2013

_____
ROBERT W. SWEET
U.S.D.J.